## ABRAHAM F. HOWE vs. SETH DEWING.

*It seems*, that the following writing, signed by the highest bidder at a sale by auction, and ad-
dressed by him to the vendor, who adds thereto the words " agreed to the within " and his
signature, is sufficient to take the sale out of the statute of frauds: "I hereby relinquish
all my right and title in the estate on Ruggles Street, purchased at auction on Saturday
afternoon, to T. L. provided he pays you the sum of $375 [the amount of the highest bid]
and provided he agrees to take said estate on or before Thursday of the present week;
and you will make your deed to said L., if he elects to take the estate, instead of making
the same to me."

The grantee named in a deed of land, on receiving it from the grantor, gave him a written
receipt, in which he acknowledged that he had received the deed, and promised to return
it to him on demand, or to pay him in money the consideration named therein. *Held*, that
the effect of the receipt was a question of law, and, no demand for a return of the deed
having been made, that the title to the estate had vested in the grantee.

ASSUMPSIT by an auctioneer for money paid and services ren-
dered in advertising and selling several parcels of real estate in
Roxbury for the defendant, as assignee of Shubael Bills, an
insolvent debtor. Plea, the general issue, with a specification of
defence that the plaintiff, in rendering the alleged services, greatly
neglected his duty, and in particular neglected to make such
memorandum in writing of the contract of sale of said real
estate, as was required by the statute of frauds, although thereto
bound by his duty and the specific instructions of the defendant,
and that in consequence of such neglect the defendant had
derived no benefit from such services.

At the trial in the court of common pleas, before *Perkins*, J.
there was evidence of the following facts: One of said parcels
of real estate, situated on the corner of Ruggles Street and Rus-
sell Court, was bid off by Nathan Smith for $375. No memo-
randum in writing was made of said sale, although the attention
of the plaintiff was called immediately after the sale to the nec-
essity of such a memorandum in order to bind the purchaser,
and he said he would take care of that. On the next week day
after the sale, Smith determined to refuse to take the land, and
went with the defendant to Thomas Lord, who was the next
bidder at the auction, and induced him to take the estate at the
price bid by Smith, and transferred to Lord his right to take

the estate, by a writing, of which, and of the defendant's assent thereto, the following is a copy: "Boston, September 28, 1850. To Seth Dewing, Esq. Assignee of Shubael Bills, Sir: I do hereby relinquish all my right and title to the equity in the estate on Ruggles Street, purchased at auction on Saturday afternoon, to Thomas Lord, of Boston, provided he pay to you the sum of three hundred and seventy five dollars, and provided said Lord agree to take said estate on or before Thursday of the present week; and you will make your deed to said Lord, if he elects to take the estate, instead of making the same to me.                                        Nathan Smith.

" Agreed to the within.                      Seth Dewing."

The defendant afterwards extended the time within which Lord might take the estate, and had a deed of the land made out to Lord, and handed it to him upon his giving the defendant a receipt, which was admitted in evidence, against the objection of the plaintiff, and of which the following is a copy: " Boston, November 9, 1850.    I have received of Seth Dewing, Esq. a deed of an estate at the corner of Ruggles Street and Russell Court in Roxbury, which I promise to return to him on demand, or to pay him in money the consideration named therein, say $375.00.                                      Thomas Lord."

The plaintiff contended that the transfer from Smith to Lord was a sufficient memorandum to bind Smith to take the estate. It appeared that this estate was, at the time of the sale, subject to a mortgage, then in process of foreclosure, and which was actually foreclosed within two or three months after the sale; and that the defendants lost the estate and the whole sum bid for it, unless Lord, upon the facts above stated, was bound to take it and pay the money.

The judge, after instructing the jury as to the duties of an auctioneer, instructed them that "if, by reason of the gross ignorance or neglect of the plaintiff to perform the services charged for, the defendant had failed to derive any benefit from them, and had suffered damages, in consequence of such ignorance or neglect, to an amount equal to or greater than the amount claimed by the plaintiff, the plaintiff could not recover: that a

memorandum was necessary to bind the purchaser to his bid for the estate in question; that the failure to make or obtain such a memorandum, in this case, was evidence from which the jury might, under all the circumstances, find such ignorance or neglect, if it satisfied them of the fact; and that the assignment from Smith to Lord was not of itself a sufficient memorandum to bind Smith to the auction purchase."

" The court also instructed the jury as to the liability of Lord to take the estate, upon his transaction and acts respecting it, and ruled that if Lord was bound to take the estate and pay for it, then the defendant could not claim any loss upon it; and having explained to the jury what in law would constitute a delivery, left the question to the jury whether, under all the circumstances, there had been a delivery to Lord in this case; and instructed them that the question, in this branch of the case, was not merely whether there had been a delivery to Lord so as to bind the defendant, but whether there had been such a sale and delivery of the deed as to bind Lord to pay for the estate, in which case there would be no loss."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions to these instructions.

*G. M. Browne & J. F. Woodside,* for the plaintiff, to the point that the written assignment from Smith to Lord, assented to by the defendant, was a sufficient memorandum to take the sale out of the statute, cited *Little* v. *Pearson,* 7 Pick. 301; *Atwood* v. *Cobb,* 16 Pick. 227; *Barry* v. *Coombe,* 1 Pet. 651.

*W. Gaston & J. W. May,* for the defendant, cited 1 Greenl. Ev. § 268; 2 Kent Com. (6th ed.) 511; *Morton* v. *Dean,* 13 Met. 385; *Hinde* v. *Whitehouse,* 7 East, 556; *Bailey* v. *Ogden,* 3 Johns. 419; *Abeel* v. *Radcliff,* 13 Johns. 297; *Burke* v. *Haley,* 2 Gilman, 614; *Dorsey* v. *Wayman,* 6 Gill, 66; *Taney* v. *Bachtell,* 9 Gill, 205; *Sherburne* v. *Shaw,* 1 N. H. 157, to the point that this memorandum was not sufficient; and *Denew* v. *Daverell,* 3 Campb. 451; *Jones* v. *Nanney,* 13 Price, 76, to the point that it was the duty of the auctioneer to make a memorandum in writing of the sale, even where he had not expressly agreed to make one, as he did in this case.

THOMAS, J. It was the duty of the auctioneer to make a memorandum in writing of the sale, and the failure to do so, and a loss to the vendor consequent upon such failure, would be a good defence upon a *quantum meruit* by the auctioneer for his services in making the sale.

We are inclined to the opinion that the letter of September 28th 1850, addressed to the defendant by Smith the purchaser, and signed by the defendant after the words "agreed to the within," was a sufficient memorandum to take the sale out of the statute of frauds. But it is not necessary to decide this point, because there is another which is conclusive of the cause, and about which we have less difficulty.

A deed of the land was made to Lord. Lord, upon taking the deed, gave to the defendant a written receipt. The effect of that receipt was a question of law for the court, and not of fact for the jury. We think it gave to Lord a good title to the equity of redemption. The grantee, indeed, promised to return the deed on demand of the defendant, or pay the consideration money named therein. The right of making such demand, and of electing whether he would make it or not, was in the defendant. There is no evidence that such demand was ever made. The demand might have been of little value, if in the mean time the grantee had conveyed the estate. But it is sufficient that no demand was made. The title vested in Lord, upon the receipt of the deed. If this be so, the defendant, it would seem, sustained no substantial injury by the neglect of the auctioneer to make a memorandum of the sale. The decision of this point may determine the cause, but the present entry must be

*Exceptions sustained.*